# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23821-Civ-WILLIAMS/TORRES

JANET SMITH-RUSSO, Administratrix of the
ESTATE OF JOHN J. RUSSO, deceased,

      Plaintiff,

v.

NCL (BAHAMAS) LTD. d/b/a, a/k/a, t/a
NORWEGIAN CRUISE LINE d/b/a, a/k/a, t/a
NORWEGIAN GETAWAY, and
TOPSAILS, INC., and
VIRGIN EXCURSIONS, LLP

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

This cause came before the Court upon Motions to Dismiss from Defendants Virgin Excursions, LLP ("VE") [D.E. 52]; Topsails, Inc. ("Topsails") [D.E. 53]; and NCL (Bahamas), LTD. ("Norwegian") [D.E. 54].[1] Plaintiff, Janet Smith-Russo, filed separate Responses to each Motion [D.E. 60-62] and each Defendant filed its own Reply [D.E. 65-67]. After careful consideration of the supporting record and for the reasons stated herein, the Motions filed by VE and Topsails should be **GRANTED** and Norwegian's Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**.

---

[1]    On June 13, 2017, The Honorable United States District Judge Kathleen M. Williams referred these motions for a Report and Recommendation. [D.E. 69].

## I.  BACKGROUND

In September 2015, Plaintiff's husband, John Russo ("Mr. Russo"), participated in the Exclusive Abi Beach Getaway in St. Thomas, a United States Virgin Island. [D.E. 47 at 8-9]. The Exclusive Abi Beach Getaway was an excursion operated by VE and Topsails in connection with Mr. Russo's cruise aboard Norwegian's ship, the *Getaway. Id.*[2] The complaint alleges that the Excursion Defendants organized the excursion, which included transportation aboard a ship, *Blackbeard's Revenge*, from Norwegian's *Getaway* to Abi Beach. *See id.* at 8-10, ¶ 21-37. Mr. Russo died while participating in this excursion. *Id.* at 14, ¶ 69. Plaintiff alleged that Norwegian owed a duty to exercise reasonable care in contracting with VE and Topsails and that Norwegian performed this duty negligently. *See id.* at 18-19, ¶ 89-90. Further, Plaintiff claims that because VE and Topsails "breached their duty to provide [Mr. Russo] with reasonable care under the circumstances," Mr. Russo was injured as a result. *Id.* at 31, ¶ 129-30.

All three Defendants filed Motions to Dismiss Plaintiff's Complaint [D.E. 26-28] earlier in the litigation, but these Motions became moot when Plaintiff filed an Amended Complaint [D.E. 47]. Plaintiff's Amended Complaint included six counts, including counts for negligence, negligent misrepresentation, agency, and joint venture in connection with the death of Mr. Russo. [D.E. 47 at 18-47].

VE and Topsails maintain that the law in the Circuit mandates dismissal for lack of personal jurisdiction notwithstanding the allegations in the Amended

_____

[2]     Plaintiff refers to VE and Topsails together as "Excursion Defendants" throughout her Amended Complaint. [D.E. 47 at 3, ¶ 8]. Accordingly, this Court will refer to VE and Topsails together as the "Excursion Defendants."

Complaint. [D.E. 52-53]. This Court agrees and finds no personal jurisdiction over VE and Topsails.[3] Additionally, Norwegian moved to dismiss Counts I, II, IV, and VI of Plaintiff's Amended Complaint for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6). [D.E. 54]. We agree in part and Recommend that Norwegian's Motion to Dismiss be granted in part and denied in part.

### A. *Standard Shore Excursion Agreement Between Norwegian and VE.*

Norwegian and VE executed a Standard Shore Excursion Agreement, which identified VE as an independent contractor. [D.E. 50 at 1]. This section of the Agreement made clear that nothing in the "Agreement shall be construed as constituting [VE] and Norwegian as partners, or as treating the relationship as one of employer and employee, franchisor and franchisee, master and servant, principal and agent or joint venturers." *Id.* Additionally, VE agreed to "not directly market any tours to Norwegian Passengers without the prior express written consent of Norwegian." *Id.* at 2. Further, VE agreed to not "assign or subcontract this Agreement without the prior written consent of Norwegian." *Id.* at 8. VE agreed to "obtain the prior written consent of Norwegian for any advertising, promotion, marketing or publicity employed by [VE] that uses the name, logos, trademarks or servicemarks of Norwegian, or its parent or affiliates." *Id.* Norwegian and VE

---

[3]     The Court need not address the other arguments to dismiss that VE and Topsails made because we the Motions can be granted solely on the basis of a lack of personal jurisdiction. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214, n. 6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action") (citation omitted).

agreed that the "Agreement shall be governed by the laws of the State of Florida" and to submit

> to the exclusive jurisdiction of the United States District Court for the Southern District of Florida, or if jurisdiction is not available therein, the jurisdiction of any court located in Miami-Dade County, Florida, and waive any and all objections to such jurisdiction or venue that they may have under the laws of any state or country, including without limitation, any argument that jurisdiction, situs and/or venue are inconvenient or otherwise improper.

*Id.* at 9.

Notably, a separate provision of the Standard Shore Excursion Agreement states that the "Agreement shall not be deemed to provide third parties with any remedy, claim, or right of action." *Id.*

### B. *Plaintiff's Jurisdictional Allegations.*

Plaintiff asserts that personal jurisdiction is proper in Florida for Norwegian because its principal place of business is located in Miami. [*See* D.E. 47 at 1]. As for the Excursion Defendants, Plaintiff asserts that they are subject to personal jurisdiction under both the general and specific jurisdiction provisions of the Florida long-arm statute, or, alternatively, under Fed. R. Civ. P. 4(k)(2). *Id.* at 2, 4-8, ¶ 10-20. According to Plaintiff, "this Court has general jurisdiction over [VE] as [VE's] contacts with the State of Florida . . . are so substantial and of such a nature as to justify suit against [VE.]" *Id.* at 5, ¶ 11(f). Plaintiff concludes that "[b]ecause the Excursion Defendants regularly conduct business through [Norwegian], the Excursion Defendants are subject to the jurisdiction of the Courts of this State." *Id.* at 5, ¶ 12. Additionally, VE is allegedly subject to this Court's specific jurisdiction

because its CEO conducted business in an office in Florida and because VE "[d]erived 100% of their business through sales directed at and conducted through passenger contracts sold, negotiated and executed in the State of Florida." *Id.* at 4-5, ¶ 11(a), (c).

Specifically, Plaintiff maintains in sum that:

> [a]t all times material hereto, the Excursion Defendants entered into a contract and/or written or unwritten business arraignment with [Norwegian] for the protection of [Norwegian] passengers, as a result of which the Excursion Defendants agreed and/or consented to subject themselves to the laws and jurisdiction of the State of Florida, consented to personal jurisdiction over themselves to the laws and jurisdiction of the United States District Court for the Southern District of Florida as [Norwegian has] an [sic] venue/ jurisdiction clause in the Guest Ticket Contract which provides for exclusive venue/ jurisdiction in the instant Court.

*Id.* at 6, ¶ 16.

Next, Plaintiff alleged that the "Excursion Defendants are subject to the jurisdiction of this Court because they maintain an office and sell excursion tickets in Miami, Florida and/or sell excursion tickets through Norwegian's website and/or the Delta Employee Website which has direct access to the Norwegian Website, both of which are administered in Florida." *Id.* at 6, ¶ 18. Based on this same allegation, Plaintiff alleged in the alternative that "the Excursion Defendants are subject to the jurisdiction of this Court under Federal Rule of Civil Procedure 4(k)(2) . . . ." *Id.* at 6, ¶ 19.

Addressing VE alone, Plaintiff alleged that VE:

> is subject to the specific jurisdiction of this Court as it has purposefully directed business activity to the State of Florida by soliciting sales and procurement contracts with Florida based business entities, i.e. cruise

lines, from which [VE] derives 100% of its passengers and revenue and without which contracts and/or business arrangements, [VE] would be unable to operate as it would lose 100% of its business.

*Id.* at 7, ¶ 20.

Further, the "Excursion Defendants do not advertise at all on their own, and do not provide services to the St. Thomas locals, or other tourists that are not being procured to them specifically by [Norwegian]." *Id.* at 7, ¶ 20(h). Additionally, "[w]ere it not for [Norwegian] and/or the cruise line industry, the Excursion Defendants would have no passengers on its [sic] excursions and would make no money, as all their payments come from Norwegian." *Id.* at 8, ¶ 20(j).

## II. APPLICABLE PRINCIPLES AND LAW

### A. <u>Motion to Dismiss for Lack of Personal Jurisdiction.</u>

The standard of review for a motion challenging personal jurisdiction is well established:

> A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida; and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida.

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (internal quotations and citations omitted).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "The Court must take factual allegations in the Complaint as true." *Chimene v. Royal Caribbean Cruises Ltd.*, 2017 WL 1536055, at *1 (S.D. Fla. Apr. 5, 2017) (citing *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)). Where "the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs*, 447 F.3d at 1360 (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir 2002)). "But when the plaintiff offers no competent evidence to the contrary, 'a district court may find that the defendant's unrebutted denials [are] sufficient to negate the plaintiff's jurisdictional allegations.'" *Chimene*, 2017 WL 1536055, at *1 (quoting *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013)) (alteration in original).

In *Daimler AG v. Bauman*, the Supreme Court reiterated "that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 134 S. Ct. 746, 760 (2014). As a result, "'[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of

incorporation or principal place of business[.]'" *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1336 n.7 (S.D. Fla. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)) (first alteration in original).

**B.    *Motion to Dismiss for Failure to State a Claim.***

In ruling on Norwegian's Motion to Dismiss under Rule 12(b)(6), this Court takes the allegations in the Amended Complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A Motion to Dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Bell Atl. Corp.*, 550 U.S. at 555 (internal citations and quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [Plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

## III.   ANALYSIS

### A.   *This Court Lacks Personal Jurisdiction over VE.*

#### 1.   *VE Is Not Subject to General Jurisdiction in Florida.*

Plaintiff alleged that VE is subject to general jurisdiction in Florida based on VE's "substantial" contacts with Florida. [D.E. 47 at 5, ¶ 11(f)].  Yet, after 2014 it is now settled law today that "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction. *Daimler,* 134 S. Ct. at 760.  That limited set of affiliations does not include the scattered and fleeting contacts that Plaintiff relies upon to defeat VE's motion.  Even before *Daimler,* it was the law in this Circuit that a party's contacts with the forum had to be "pervasive" to support the exercise of general jurisdiction." *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1075 (11th Cir. 1999).  But in a case like this one, intermittent purchases, self-promotion, and a few narrow relationships with American businesses would not be sufficient to give rise to general jurisdiction. *Fraser v. Smith,* 594 F.3d 842, 850 (11th Cir. 2010) ("We thus

conclude that the contacts in this case were not sufficiently pervasive, continuous, and systematic to establish general jurisdiction over [excursion boat operator]").

That was Eleventh Circuit *before* the Supreme Court narrowly constrained the reach of general jurisdiction in *Daimler*. Thus applying those now-entrenched principles here forecloses the exercise of general jurisdiction over VE. Judge Moreno recognized as much in a case with very similar facts, *Chimene,* that he measured against the Eleventh Circuit's guiding principles:

> Plaintiff alleges MC Tours is subject to general jurisdiction because it: maintains a bank account and mailing address in Florida, procures insurance in Florida, is a member of the Florida Caribbean Cruise Association, consented to jurisdiction in the Southern District of Florida, and attends business meetings in Florida.
>
> But in *Carmouche*, the Eleventh Circuit rejected the following similar contacts as insufficient for general jurisdiction over a foreign defendant: (1) a contractual relationship with several Florida-based cruise lines; (2) a Florida bank account; (3) two Florida addresses; (4) purchase of insurance from Florida companies; (5) a financing statement with the Florida Secretary of State; (6) membership in the Florida Caribbean Cruise Association; and (7) consent to the jurisdiction of the Southern District of Florida. *Carmouche*, 789 F.3d at 1203.

2017 WL 1536055, at *2.

While the plaintiffs' arguments in *Chimene* and *Carmouche* for general jurisdiction rely on facts similar to those Plaintiff relied in the present case, the arguments for general jurisdiction over the defendants were stronger in *Chimene* and *Carmouche* than they are here. We only have Plaintiff's allegation, which we assume true for purposes of this motion, that VE's CEO conducted business in an office in Florida and VE "[d]erived 100% of their business through sales directed at

and conducted through passenger contracts sold, negotiated and executed in the State of Florida." *Id.* at 4-5, ¶ 11(a), (c). These two connections to Florida are clearly insufficient, at least for general jurisdiction, if all the contacts that were found in *Chimene* were still found to be lacking.

Similarly, in *Aronson v. Celebrity Cruises, Inc.*, Judge Williams held that even stronger facts did not lead to the defendant being subject to general jurisdiction in Florida. 30 F. Supp. 3d 1379, 1386-87 (S.D. Fla. 2014). There:

> the court held the foreign defendant's "contacts with Florida [were] not sufficiently substantial or continuous to support a finding of [specific or general] jurisdiction even though it: (1) marketed and advertised on Florida-based cruise lines' websites; (2) contracted with Florida-based cruise lines; (3) was paid from Florida banks; (4) travelled to Miami for trade shows; (5) were members of the Florida Caribbean Cruise Association; (6) submitted bids and tour proposals to Florida-based cruise lines; (7) purchased supplies and insurance in Florida; and (8) agreed to personal jurisdiction in Florida through its contracts with Florida-based cruise lines.

*Chimene*, 2017 WL 1536055, at *2 (alterations in original) (citation omitted). Again, our record pales in comparison to *Aronson* as well as *Chimene* that followed *Aronson*'s reasoning.

Even further support for VE's position, and against Plaintiff's general jurisdiction theory, can be found in *Thompson* where Chief Judge Moore also persuasively explained why general jurisdiction cannot exist from facts like ours. 174 F. Supp. 3d at 1334-35. Again quoting Judge Moreno:

> In *Thompson*, the court held that an inquiry into general jurisdiction over a foreign defendant "practically ends before it begins" given the Supreme Court's and Eleventh Circuit's recent decisions. *Thompson*, 174 F. Supp. 3d at 1334. The contacts in *Thompson* included: "(1) contractual relationships with Carnival and other cruise lines; (2)

Florida bank accounts; (3) a relationship with the Florida Caribbean Cruise Association; (4) agreements to indemnify Carnival; and (5) consent to jurisdiction in the Southern District of Florida for any lawsuit that Carnival is a party to concerning the shore excursion." *Id.* at 1335. That court examined whether a foreign excursion company's contacts with Florida presented the "exceptional" circumstance outlined in *Daimler*. Answering in the negative, the court held "the Excursion Entities' connections to Florida are fewer than those found insufficient in *Carmouche*. In light of *Carmouche*, the Court would be hard-pressed to find that the Excursion Entities are 'at home' in Florida based on [its] contacts." *Id.* This Court also declines to exercise general jurisdiction over MC Tours.

*Chimene*, 2017 WL 1536055, at *2 (alteration in original).

The meager contacts alleged in our case to sustain a general jurisdiction theory pale by comparison. We agree with Judges Moreno and Moore that these limited contacts do not present the type of overwhelming contacts required to find that VE is "at home" in Florida. We are thus bound to hold that the motion should be Granted in this respect because we cannot exercise general jurisdiction over VE. *See also Wolf v. Celebrity Cruises, Inc.,* 2017 WL 1149092, at *3 (11th Cir. Mar. 28, 2017) (affirming order dismissing complaint against foreign tour operator, in part because general jurisdiction was lacking despite plaintiff's reliance on defendant's continuous use of Florida mailing address and tour operator agreement with cruise line); *Schulman v. Inst. for Shipboard Educ.,* 624 F. App'x 1002, 1005 (11th Cir. 2015) (affirming order dismissing complaint against foreign boat manufacturer because general jurisdiction was lacking despite defendant's distribution agreements with Florida and U.S. dealers, regular advertising and marketing efforts to the U.S. market, and regular attendance at boat trade shows in Florida; "These connections are far less substantial than those the Supreme Court has

rejected as insufficient for general personal jurisdiction."); *Bluewater Trading, LLC v. Fountaine-Pajot, S.A.,* 335 F. App'x 905, 907 (11th Cir. 2009) (affirming order of dismissal as no general jurisdiction existed despite defendant's regular participation in Miami boat shows, routine advertising in Florida and U.S. magazines, and routine correspondence with Florida dealers).

### 2. *VE Is Not Subject to Specific Jurisdiction in Florida.*

Plaintiff based her first argument for specific jurisdiction over VE on Florida's Long-Arm Statute, Fla. Stat. § 48.193(1) or 48.193(2). [D.E. 47 at 2]. But this theory also fails. "The Court also lacks specific jurisdiction over [VE], which requires a nexus between the alleged tort and [VE's] activities in Florida." *Chimene*, 2017 WL 1536055, at *3. Again, Judge Moreno's opinion in *Chimene* guides our own analysis:

> Plaintiff asks the Court to exercise specific jurisdiction over MC Tours because "Plaintiff [saw] the advertising on the Florida based RCCL website and such advertising and solicitation activities in Florida, on behalf of MC Tours, did influence Plaintiff's decision to purchase the subject excursion." The Court interprets this argument as one made under an agency theory as it was Royal Caribbean's server in Florida that transmitted the advertisement through its website. Notably, Plaintiff's negligence claim against MC Tours does not mention negligent advertising. Indeed, it is in Plaintiff's agency by estoppel claim against Royal Caribbean that she alleges Royal Caribbean was the one to "advertise[] a series of internet, brochure, and other media about the availability of the Caribe Zip Line excursion." Thus, Plaintiff cannot argue that MC Tours negligently advertised its excursion without imputing Royal Caribbean's negligence to the excursion company—and this Circuit has rejected jurisdiction over foreign defendants under an agency theory. *See Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1100028, at *4 (S.D. Fla. Mar. 15, 2013) (finding no specific jurisdiction over an excursion company based on "Plaintiff's various theories to support jurisdiction, which include[d] either substantial activity in Florida or a possible agency, joint

venture, or contract between the Defendants [that] rest[ed] on one single factual allegation: the excursion was advertised and sold by RCCL").

*Id.* (alterations in original).

We have nothing more here to rely upon for specific jurisdiction. VE's exclusive advertising relationship with a Florida-based customer, Norwegian, is also not sufficient to sustain jurisdiction for an injury that did not directly or proximately result from that advertising relationship. Similarly, the CEO's use of an office here was not proximately related to the injury at issue that occurred more than one thousand miles away. This is not a negligent advertising case; this is a case about negligent operation of a vessel in an excursion conducted off the coast of St. Thomas. Plaintiff has not cited a single act that VE committed in Florida that was at all related to the injury that occurred in the waters off St. Thomas. There is no logical and necessary relationship between the injury and the forum to sustain specific jurisdiction under the Long-Arm statute. Both subsections (1) and (2) of the statute require any relevant contact in Florida to give rise to "any cause of action arising from" those acts. Here, no such finding can be made. *See, e.g., Wolf v. Celebrity Cruises*, 2017 WL 1149092 at *4 ("Because the alleged tortious activity occurred outside of Florida, and there is no connexity between the [excursion operator's agreement with cruise line] and [the] cause of action, the district court ... lacked specific personal jurisdiction over [excursion operator].").

Plaintiff then asserted in the alternative that VE was subject to specific jurisdiction under Fed. R. Civ. P. "4(k)(2) because [the Excursion Defendants]

maintain an office and sell excursion tickets in the United States and/or sell excursion tickets through Norwegian's website, or the Delta Employee website which have direct access to the Norwegian Website, both of which are administered in the United States." [D.E. 47 at 6-7, ¶ 19].

Fed. R. Civ. P. 4(k)(2) states:

> (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> > (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> > (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

Based on Plaintiff's Amended Complaint, this Federal Rule also does not apply to sustain personal jurisdiction. As the Court in *Chimene* found:

> The *Wolf* Court also rejected jurisdiction under Rule 4(k)(2) and explained that "[w]here 'a defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state,' Rule 4(k)(2) 'permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law;' and, (2) the exercise of jurisdiction must be 'consistent with the Constitution and laws of the United States.'" *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting Fed. R. Civ. P. 4(k)(2)). But in *Wolf*, the plaintiff had not "addressed the due process prong of this analysis in his briefing, nor ha[d] he specifically alleged any contacts with the United States beyond those asserted under Florida's long-arm statute." *Wolf*, 2017 WL 1149092, at *4.

*Chimene*, 2017 WL 1536055, at *3 (alterations in original) (citing *Wolf,* 2017 WL 1149092, at *4).

As in *Wolf*, Plaintiff did not "address[] the due process prong of this analysis in [her] briefing, nor [did] [s]he specifically allege[] any contacts with the United States beyond those asserted under Florida's long-arm statute." *Wolf*, 2017 WL 1149092 at *4. "Accordingly, our analysis is the same as above with respect to general jurisdiction. [Plaintiff], without more, has not established jurisdiction under Rule 4(k)(2)." *Id.*[4]

For the reasons stated above, VE lacks both general and specific jurisdiction under Florida's Long-Arm statute and Fed. R. Civ. P. 4(k)(2). All claims against VE should be Dismissed under Rule 12(b)(2) based on a lack of personal jurisdiction.

### B. ***This Court Lacks Personal Jurisdiction over Topsails.***

The analysis for why this Court lacks personal jurisdiction over Topsails is largely the same as the above analysis regarding VE. Plaintiff never addressed personal jurisdiction over Topsails in her Amended Complaint directly. She did reference Topsails throughout her Amended Complaint by using the term, "the Excursion Defendants." [*See* D.E. 47 at 1-46]. However, the only paragraphs of Plaintiff's Amended Complaint that address Topsails directly are in "Count V –

---

[4]     Moreover, an essential component of the Rule 4(k)(2) analysis is that that the claims at issue must arise under federal law. An action founded on admiralty jurisdiction does not "arise under federal law" for purposes of this Rule any more than it arises under federal law for purposes of 28 U.S.C. § 1441. *See, e.g., J.P. v. Connell,* 93 F. Supp. 3d 1298, 1303 (M.D. Fla. 2015) (citing *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 371-72 (1959) ("Thus the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would be freely removable under § 1441")). We need not reach this issue, however, because the relevant contacts yield no different result under this Rule than they do under Florida's Long-Arm statute.

Agency, Apparent Agency or Agency by Estoppel Claim Against Virgin Excursions, LLP." *Id.* at 38-41, ¶ 150-65. These paragraphs do not address jurisdiction. *Id.*

Just as no allegation regarding the Excursion Defendants created a prima facie showing of personal jurisdiction in the above section for VE, no allegation creates a prima facie showing of personal jurisdiction over Topsails. For the reasons stated above, Topsails should also be Dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

C. ***Norwegian's Motion to Dismiss Counts I, II, IV, and VI of Plaintiff's Amended Complaint for Failure to State a Claim.***

Plaintiff pleaded four separate counts against Norwegian in her Amended Complaint, "Count I – Negligence Against Norwegian" *id.* at 18-27, ¶ 84-106; "Count II – Negligent Misrepresentation Against Norwegian" *id.* at 27-30, ¶ 107-25; "Count IV – Apparent Agency or Agency by Estoppel Claim Against Norwegian" *id.* at 35-38, ¶ 137-49; and "Count VI – Joint Venture Between Norwegian and the Excursion Entities" *id.* at 41-47, ¶ 166-87. As we explain below, Norwegian's Motion to Dismiss Counts II and VI should be Granted, but its Motion as to Counts I and IV should be Denied.

### 1. *Plaintiff stated a claim of negligence against Norwegian.*

To state a negligence claim against a shipowner, Plaintiff is required to plead: (1) Norwegian had a duty to protect Plaintiff from a particular injury; (2) Norwegian breached that duty; (3) the breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citing *Zivojinovich v. Barner*, 525 F.3d 1059,

1067 (11th Cir. 2008)). While cruise ship owners and operators owe their passengers "the duty of exercising reasonable care under the circumstances of each case [,]" *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959), the operator "is not an issuer of its passengers' safety . . . . There thus must be some failure to exercise due care before liability may be imposed." *Long v. Celebrity Cruises, Inc.*, 982 F. Supp. 2d 1313, 1315 (S.D. Fla. 2013).

To survive a motion to dismiss, a complaint must allege plausible facts to find that a duty of care existed in the first place:

> The Court first considers whether Plaintiff sufficiently pleaded the appropriate duty of care in her Complaint. Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers. Rather, the duty is one of reasonable care under the circumstances. *See Kermarec*, 358 U.S. at 630; *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("The benchmark against which a ship owner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition."). Reasonableness of care, in turn, is measured by the extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and pose greater danger to the passenger. *Reinhardt v. Royal Caribbean Cruises*, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013).

*Brown v. Carnival Corp.,* 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016).

Plaintiff included several allegations in her Amended Complaint to sustain a prima facie showing of Norwegian's duty of care. [D.E. 47 at 18-27, ¶ 84-106]. Specifically:

> 85. It was the duty of Norwegian to provide Plaintiff's Decedent with reasonable care under the circumstances.

86. Additionally, Norwegian undertook a duty to draft operation requirements and standards which it required by contract that excursion operators, including the Excursion Defendants to comply with in the performance of their duties in providing shore excursions.

87. Specifically Norwegian required the Shore Excursion Defendants to comply with the "Norwegian Cruise Line Tour Operator Procedures and Policies" Manual and the "Prestige Cruise Holdings Tour Operator/Ground Handling Guidelines". [sic]

88. By voluntarily undertaking the duty to draft, formulate, research, and write these guidelines, and by undertaking the duty to require the Excursion Defendants to comply with them, Norwegian owed Plaintiff's Decedent a duty to exercise reasonable care in the performance of undertaking that duty and failed to do so as set forth below.

89. By negligently performing the duty it had undertaken and/or assumed in drafting and requiring with the above documents, the Defendant caused harm or increased the risk of harm to the Plaintiff's Decedent as the Plaintiff's Decedent and Jill Pires and every passenger reasonably relied upon Norwegian performing that duty it had undertaken in a reasonable and non-negligent manner.

90. Additionally Norwegian owed to the Plaintiff's Decedent and all passengers aboard the *Getaway* a duty to exercise reasonable care in the hiring and/or selection of contractors, agents, ostensible agents, join [sic] venturers and/or employees including the Excursion Defendants.

*Id.* at 18-19, ¶ 85-90.

Undeniably there is no connection between "a duty to draft operation requirements" [D.E. 47 at 18, ¶ 86] and a defendant's "duty to protect the plaintiff from a particular injury[.]" *Chaparro,* 693 F.3d at 1336. Yet Plaintiff also alleged that Norwegian was negligent in contracting with VE. [*See* D.E. 47 at 18-19, ¶ 90]. This negligent hiring allegation triggers the same analysis that the Eleventh Circuit addressed in *Wolf*:

> Mr. Wolf's contention that Celebrity was negligent in its hiring and retention of OCT as a shore excursion operator similarly fails. Under Florida law, "an employer is subject to liability for physical harm to third persons caused by [its] failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." *Davies v. Commercial Metals Co.*, 46 So. 3d 71, 73 (Fla. 5th DCA 2010) (citation omitted). A plaintiff must generally establish "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Id.* at 74 (citation omitted).

*Wolf*, 2017 WL 1149092, at *6 (alteration in original).

Though the Court held that the negligent hiring claim failed, the Eleventh Circuit in *Wolf* was reviewing a Motion for Summary Judgment and was thus able to examine the entire record. *Id.* at *9. As a result, the Court was able to review the defendant cruise line's evidence regarding its selection of the excursion provider. *Id.* at *7. By contrast, here we are limited to the four corners of Plaintiff's Amended Complaint and its attached exhibits. *See* Fed. R. Civ. P. 10(c), 12(b). This constrained standard of review makes a difference.

In her Amended Complaint, Plaintiff alleged:

> 95. In addition, upon information and belief, [Norwegian] had received numerous and regular complaints from cruise ship passengers about the ability of the Excursion Defendants, who the cruise ship passengers believed to be employed by, agents or, [sic] or engaged in a joint venture with [Norwegian], about the ability of the Excursion Defendants to safely operate excursions for passengers of [Norwegian].

> 96. Specifically in May 2015, months prior to the Plaintiff's Decedent's wrongful death, [Norwegian] and [the] Excursion Defendants received a complaint from a guest on the Abi Beach excursion about the safety of the Abi Beach Excursion, including that the crew was unsafe, the crew members were intoxicated, the crew

20

member who operated the dinghy was intoxicated and operated the dinghy in an unsafe manner and other various complaints which did in fact place [Norwegian] on notice of the fact that that Excursion Defendants and their agents, ostensible agents, servants, employees and/or contractors lack the requisite skill, knowledge and/or care to perform the operation of the excursions in a reasonable and safe manner.

97. By hiring and/or retaining the Excursion Defendants as their agents, ostensible agents, servants, joint venturers, employees and/or contractors, [Norwegian] breached their duties set forth above to the Plaintiff's Decedent.

98. Despite actual and/or constructive knowledge about the inability of the Excursion Defendants to safely operate excursions for passengers of [Norwegian] as a result of the above complaints, as well as the observations of [Norwegian, Norwegian] continued to engage in a joint venture with the Excursion Defendants and continued to place its own cruise ship passengers, including the Plaintiff's Decedent on excursions with the Excursion Defendants which posed a risk of harm and/or death to them.

99. Plaintiff's Decedent died as a result of the fault and/or negligence of Norwegian and/or its agents, ostensible agents, servants, contractors, joint venturers and/or employees for acts and/or omissions that include, but are not limited to, the following:

> a. Failure to provide a safe excursion; and/or

> b. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

> c. Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject excursion was reasonably safe for cruise passengers and the Plaintiff's Decedent . . . .

[D.E. 47 at 19-21, ¶ 95-99(c)].

Through these allegations, Plaintiff plausibly sets forth a prima facie showing that "(1) the [Excursion Defendants were] incompetent or unfit to perform the work; (2) [Norwegian] knew or reasonably should have known of the particular

incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Wolf*, 2017 WL 1149092, at *6 (internal quotation and citations omitted).

By making this showing, Plaintiff pleaded the four elements required to state a negligence claim against a shipowner as enumerated in *Chaparro*, 693 F.3d at 1336. Accordingly, Plaintiff stated a claim for negligence against Norwegian and Norwegian's Motion to Dismiss Count I must be Denied.

### 2. *Plaintiff failed to state a claim of negligent misrepresentation against Norwegian.*

To state a cause of action for negligent misrepresentation in Florida, a plaintiff must allege: "(1) the defendant made a misrepresentation of material fact that [plaintiff] believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation."

*McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013) (quoting *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)). These necessary predicates are lacking in this complaint.

Specifically, Plaintiff here alleged:

111. The advertising on the Norwegian website for the Abi Beach Excursion indicated that the excursion being provided included a "scenic cruise **to exclusive Abi Beach**". [sic]

112. The advertising further represented that "after two hours of beach time, you'll embark your boat for your return cruise back to the ship" [sic]

113. Nowhere in the excursion description on the Norwegian website did it state that passengers would not be transported to [sic] directly from ship to shore.

114. In fact, the plain language of the description on the Norwegian website reads that the passengers would be transported to the Beach.

[D.E. 47 at 27-28, ¶ 111-14] (emphasis in original).

Plaintiff also alleged that "[t]he captain and/or crew of 'Blackbeard's Revenge' told the passengers, including the Plaintiff's Decedent, that they could swim to shore, or wait for a single dinghy which fit less than 6 people safely, to 'ferry' passengers to shore in multiple trips." *Id.* at 11, ¶ 39.

But these allegations do not allow for a plausible finding that Norwegian misrepresented the fact that the passengers who chose to participate in the Exclusive Abi Beach Getaway would be transported to the shore. There is no allegation that Norwegian knew that Mr. Russo would be forced to swim to shore, rather than through the use of dinghy from the *Blackbeard's Revenge.* In fact, Plaintiff alleged that Mr. Russo was the third person aboard the *Blackbeard's Revenge* to voluntarily "walk the plank" of the ship and then attempt to swim to shore. *See id.* at 12, ¶ 47-48. Additionally, Norwegian stated in the email provided in the Amended Complaint that Abi Beach is "[a]ccessible only by boat . . . ." *Id.* at 28.[5] It is unclear why anyone involved in the Exclusive Abi Beach Getaway thought

---

[5]     There is reason to question the validity of the email identified at page 28 of the Amended Complaint. The email appears to be written by the Assistant Shore Excursion Manager of the *Getaway* to Listar Henry. Listar Henry is never identified and is not referenced anywhere else in the Amended Complaint. The email is dated May 31, 2015, but there if no indication that Listar Henry was ever a passenger aboard a Norwegian cruise or if Listar Henry and Mr. Russo were on the same

to access the beach by means other than a boat, but this decision does not appear to be connected to any representation made or not made by Norwegian. At minimum, no such connection can be drawn from any factual allegation in this Amended Complaint.

In sum, Plaintiff failed to allege that Norwegian "made a misrepresentation of material fact that [plaintiff] believed to be true but which was in fact false[.]" *McGee*, 520 F. App'x at 831 (quoting *Simon*, 883 So. 2d at 832). For this reason, the Court need not consider the other three elements. Plaintiff failed to state a claim for negligent misrepresentation against Norwegian. Norwegian's Motion to Dismiss Count II should thus be Granted.

### 3. Plaintiff stated a claim of apparent agency or agency by estoppel against Norwegian.

> To plead a negligence claim premised upon apparent agency, a plaintiff must plead: (1) the alleged principal made some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, (2) that such belief was reasonable, and (3) that the claimant reasonably acted on such benefit to his detriment. *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005); *see also United Bonding Ins. Co. v. Banco Suizo–Panameno, S.A.*, 422 F.2d 1142, 1146 (5th Cir. 1970) (stating the elements for a theory of agency by estoppel are: (1) a representation by the principal, (2) reliance on the representation by the claimant, and (3) a change in position by the claimant in reliance on the representation).

*Brown*, 202 F. Supp. 3d at 1340.

Plaintiff alleged that "the Excursion Defendants were the apparent and/or ostensible agent(s) of Norwegian" [D.E. 47 at 35, ¶ 138]; that "Norwegian is estopped to deny that the Excursion Defendants were their agent(s) or employee(s)"

---

cruise. But even putting that skepticism aside on a motion to dismiss, the email does not on its face evidence a negligent misrepresentation from Norwegian.

*id.* at 35, ¶ 139; and that Norwegian's acts caused Mr. Russo "to believe that the Excursion Defendants had authority to act for the benefit of Norwegian" *id.* at 36, ¶ 140. Norwegian's alleged acts included being Mr. Russo's exclusive contact for the excursions and recommending to Mr. Russo to refrain from engaging "in excursions, tours or activities that were not sold through Norwegian, as Norwegian has no familiarity with other tours or their operations[.] *Id.* at 36, ¶ 140(e)-(f).

First, the Standard Shore Excursion Agreement between Norwegian and VE identified VE as an independent contractor. [D.E. 50 at 1]. This section of the Agreement made clear that nothing in the "Agreement shall be construed as constituting [VE] and Norwegian as partners, or as treating the relationship as one of employer and employee, franchisor and franchisee, master and servant, principal and agent or joint venturers." *Id.* And also there is no evidence of any communications between Norwegian and Topsails.[6]

Second, Plaintiff alleged "a sufficient basis to find that [Mr. Russo] may have believed the excursion entity was [Norwegian's] agent due to the way in which [Norwegian] marketed and sold the excursion to its passengers." *Brown*, 202 F. Supp. 3d at 1340. In *Brown*, Judge Ungaro cited to paragraphs 83(a)-(h) in the plaintiff's complaint and held that the plaintiff's "factual allegations will be sufficient to defeat the dismissal of her apparent agency claim." *Id.*

---

[6]     We note that the Standard Shore Excursion Agreement was not an exhibit to Plaintiff's Amended Complaint.  The Agreement was first included in the record as an exhibit to VE's Motion to Dismiss Plaintiff's Complaint. [D.E. 27]. It was then added to the docket again as [D.E. 50].  But there is no dispute as to its validity or relevance to the issues presented here so we have considered it as part of the record on the motion.

A review of paragraphs 83(a)-(h) in the plaintiff's complaint in *Brown*[7] shows that Plaintiff's allegations in the present case are nearly identical. [*See* D.E. 47 at 35-38, ¶ 137-49]. Judge Ungaro's analysis of these same facts in *Brown* is persuasive and compels us to find that Plaintiff alleged sufficiently that Mr. Russo "may have believed the excursion entity was [Norwegian's] agent due to the way in which [Norwegian] marketed and sold the excursion to its passengers." *Brown*, 202 F. Supp. 3d at 1340.

Accordingly, Plaintiff stated a claim for apparent agency against Norwegian and hence Norwegian's Motion to Dismiss Count IV should be Denied.

### 4. Plaintiff failed to state a claim of joint venture between Norwegian and the Excursion Defendants.

To assert a joint venture theory of negligence liability, a plaintiff must allege the following elements: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a a [sic] joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained."

*Brown*, 202 F. Supp. 3d at 1341 (quoting *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009)).

In her Amended Complaint, Plaintiff alleged:

174. At all times material hereto, Norwegian and one or both of the Excursion Defendants had joint and/or shared control over all aspects of the joint venture.

175. One or both of the Excursion Defendants had control over the day-to-day workings of the excursions. Norwegian also had control over the day-to-day workings of the excursions in that it required the Excursion Defendants to exercise reasonable care in the operation of the subject excursion.

---

[7] *See* D.E. 1 at 25-26, ¶ 83(a)-(h) in *Brown*, case number 1:16-cv-21448-UU.

176. Norwegian had control over the arrangements, marketing and sales of the excursion, as well as authority and control to dictate the type of vessels its paying passengers were taken upon for excursions.

[D.E. 47 at 42-43, ¶ 174-76].

Plaintiff's allegations may satisfy elements one, three, four, and five of the standard to recognize a joint venture. *See id.* at 41-47, ¶ 166-87]. But, Plaintiff failed to allege sufficiently or plausibly that Norwegian allowed either or both of the Excursion Defendants to exercise joint control. To the contrary, Plaintiff herself alleged that "Norwegian arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject excursion and the money was then shared between Norwegian and one or both of the Excursion Defendants." *Id.* at 42, ¶ 170. Further, it was Norwegian that "charged and collected a fee to [sic] passengers who utilized the excursions." *Id.* at 42, ¶ 172.

As a result, we cannot find that Plaintiff adequately pleaded all the elements for a joint venture between Norwegian and the Excursion Defendants. Norwegian's Motion to Dismiss Count VI is well taken and should be Granted.

## IV. CONCLUSION

Based on the foregoing considerations, the undersigned **RECOMMENDS** that VE's Motion to Dismiss [D.E. 52] and Topsails's Motion to Dismiss [D.E. 53] be **GRANTED** and that Norwegian's Motion to Dismiss [D.E. 54] be **GRANTED IN PART** and **DENIED IN PART**.

Pursuant to S.D. Fla. Mag. J. R. 4(b), the parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of any finding in this Report and Recommendation and bar the parties from attacking on appeal the findings contained herein, including the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898, 901 (11th Cir. 2017); *Cooley v. Commissioner of Social Security*, 671 F. App'x 767, 768-69 (Mem) (11th Cir. 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of July, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge